HENRY *et al.* v. MELTON.

No. 4410. Opinion Filed May 4, 1915.

(148 Pac. 730.)

1. GUARDIAN AND WARD—Decree Approving Guardian's Report
—Construction and Effect. The order and decree of the county
court, approving an amended final report of a guardian, examined,
and held to definitely determine the amount due the ward from
his guardian.

2. GUARDIAN AND WARD—Guardian's Bond—Decree Fixing Prin-
cipal's Liability—Conclusiveness. The principal and sureties on
a guardian's bond, in the absence of fraud, are bound by the
decree and order of the county court, duly entered upon a hear-
ing of the amended final report of the guardian, as to the amount
of the principal's liability.

(Syllabus by Dudley, C.)

*Error from Superior Court, Grady County;*

*Will Linn, Judge.*

Action by Dorothy Jessie Campbell, a minor, by J. D. Saund-
ers, her legal guardian, against F. P. Henry and others. Judg-
ment for plaintiff and defendants bring error. Case revived in
the name of Adrian Melton, as the administrator of the estate of
Dorothy Jessie Campbell, deceased, and in the name of Sarah
Meder, executrix of the estate of Louis Meder, deceased. Affirmed.

*Wm. Stacey,* for plaintiffs in error.

*Bond, Melton & Melton,* for defendant in error.

DUDLEY, C. This is an appeal from the superior court of
Grady county. The facts applicable to the question presented by

the record, in substance, are:    Mildred A. Campbell, a minor and a member by blood of the Choctaw Nation, died in November, 1906, seised and possessed of an allotment of land in the Choctaw Nation, consisting of approximately 320 acres.    She left surviving her, as her sole and only heirs at law and next of kin, her father, Samuel S. Campbell, a Choctaw Indian by blood, Clara Campbell her mother, not of Indian blood, and Dorothy Jessie Campbell, a minor, her sister.    In October, 1907, F. P. Henry, one of the plaintiffs in error, was appointed guardian of the estate of the said Dorothy Jessie Campbell, a minor, by the United States Court for the Southern District of the Indian Territory, sitting at Chickasha, who thereafter duly qualified and entered upon his duties as such, and continued to act as guardian of said minor, making reports from time to time up to and including November 10, 1911.    On April 21, 1910, said guardian, pursuant to an order of the county court of Grady county, Okla., executed a guardian's bond, payable to said minor, in the penal sum of $2,000, with George A. Hosea and Louis Meder, plaintiffs in error, as sureties. The bond is the usual statutory guardian's bond, bears the approval of the county court of Grady county, and is the basis of this action.    The guardian, some time after his appointment, the exact date of which is not disclosed by the record, sold the interest of said minor in 80 acres of her deceased sister's allotment, and received therefor a net sum of $900.    The sale was duly approved.    The guardian and the purchaser treated the ward as inheriting the whole of her deceased sister's allotment, subject to the life estate of her father therein.    The father sold his life estate, or at least some interest, to the purchaser, at the same time, or in connection with the sale of the interest of the ward in said land.    The guardian made reports to the county court from time to time, showing the receipt of the proceeds of the sale of his ward's interest in said lands.    In August, 1911, the said Samuel S. Campbell, the father of said ward, filed an application in the county court of said county, in the matter of the guardianship of said minor, claiming that he inherited the entire allotment

of his deceased child, and that the said ward had no interest therein, and that the amount. received by the guardian for the interest of said ward in the sale of a portion of said allotment in fact belonged to him, and praying for an order of the county court directing said guardian to pay the proceeds of said sale to him. Later and on September 6, 1911, the county court made another finding that said money did belong to the father of said ward, and directing the guardian to pay the same to him, upon demand. This the guardian did not do. Thereafter the said Samuel S. Campbell filed a motion in the county court to set aside the order of September 6, 1911, and thereafter and on October 31, 1911, an order was made by the county court, with John R. McCalla acting acting as special judge, setting aside and vacating said order. On the same day said order was vacated, it seems the court had under consideration what purported to be the final report of the guardian, and at the conclusion of the examination of the report an order was made, reciting that the report did not speak the truth, and directing said guardian to file an amended final report on or before November 9, 1911. Thereafter and on November 9, 1911, said guardian filed an amended final report, in which he recited the sale of the interest of said minor in said land and the claim of the father to the proceeds thereof, and requested the court to determine the question as to whom the funds belonged. To this report was attached a statement showing receipts and disbursements, with a recapitulation showing a balance on hand of $837.73. The guardian in this report and the statement of receipts and disbursements, fully advised the court of the controversy as to whom the fund belonged, and especially requested the court to determine this question claiming, however, that the fund did not belong to the ward. Following this, and on November 10, 1911, the county court, on consideration of said amended final report, made an order approving the same, discharging the guardian, appointing a new one, and directing the payment of the money to him, as shown by said report. The order, omitting the caption and signature

is as follows:

"Now on this 10th day of November, 1911, the same being a day of the regular term of this court, there came on for hearing before Hon. J. R. McCalla, special judge, duly selected by the parties hereto to hear this matter, said report coming on to be heard, the guardian, F. P. Henry, in person and by his attorney, Wm. Stacey, and it appearing that heretofore, to wit, on the 31st day of October, 1911, this court entered its order directing said guardian to file his amended final report herein, and same matter has been continued from the 9th day of November until this day for final judgment herein, and said report having been filed and considered in the premises, is of the opinion that the report herein filed by the said F. P. Henry as guardian should be approved, and it further appearing that said guardian herein should be discharged: Now, therefore, it is hereby considered, ordered, adjudged, and decreed that the said report so filed by the said F. P. Henry be, and the same is hereby approved, and that said guardian be and he is hereby ordered and directed to pay such sum as may be due as shown by said report, to the legal guardian of said minor, this day appointed, and that upon the payment of the sum of money to said guardian, the said F. P. Henry and his bondsmen herein will be fully exonerated from all liability by reason of the execution of said bond, and said guardian will be discharged."

There was no appeal from this order. J. D. Saunders was appointed guardian of said minor, and later made demand upon the said F. P. Henry, said former guardian, to pay over to him, as guardian of said ward, the amount due, as shown by said amended final report. This said former guardian failed to do, and thereafter and on December 16, 1911, the new guardian brought this action, in the name of said minor, against said former guardian and the sureties on his bond, to recover the amount due according to said report. The issues were joined, and on May 17, 1912, said cause was tried to a jury, and, at the conclusion of the testimony, the trial court instructed the jury to return a verdict for the plaintiff for the amount sued for which was done, and judgment rendered thereon. Motion for a new trial was filed, overruled, exceptions saved, and the case is here for review.

After the petition in error was filed in this court, it seems that the ward, Dorothy Jessie Campbell, died, and Adrian Melton was appointed administrator of her estate, and the action has been revived here, by agreement of the parties, in the name of Adrian M(elton, as the administrator of the estate of Dorothy Jessie Campbell, deceased. It seems also that after the appeal was perfected, Louis Meder, one of the plaintiffs in error, also died, and the action has been revived in the name of Sarah Meder, executrix of the estate of Louis Meder, deceased.

The record presents but one question for determination, and that is the effect of the order of the county court of November 10, 1911, approving the amended final report of the guardian, discharging him, and directing him to pay the amount due, as shown by said report, to the newly appointed guardian. Plaintiffs in error contend that since this order approved the amended final report of the guardian, in which he claimed that the fund, as shown by that report, did not belong to his ward, therefore, the order is a finding in his favor that the fund does not belong to the estate of the ward. This contention is not sound. The report goes fully into the question of the controversy as to whom the fund belongs, and then shows that there is a balance due of $837.73. In this report, the guardian especially asks the court to determine the controversy as to whom the fund belonged. The court approved the report, that is to say, as to the amount due, discharged the guardian, appointed his successor, and directed the old guardian to pay the amount over, as shown by the report. What does the report show? It shows a balance of $837.73, in the hands of the guardian. This is the particular balance that the county court referred to in its order directing the guardian to pay it over to his successor. The order and decree of the county court definitely fixed and settled the amount in the hands of the guardian due his ward, and that amount was $837.73. He was directed to pay it over to his successor; he refused to do so, and this constitutes a breach of his bond, for which he and his sureties are liable. There is no allegation of fraud in the court's

finding, and no appeal was taken from the order, and it therefore fixed and determined the liability of the guardian and the sureties on his bond. This is well settled in this state.

"Guardian's Bond—Sureties—Final Settlement—Conclusiveness. Sureties on a guardian's bond are, in the absence of fraud, concluded by the decree of the county court, duly entered on a hearing on an accounting, or final settlement, as to the amount of the principal's liability, although the sureties are not parties to the accounting." *Title Guaranty & Surety Co. v. Slinker*, 35 Okla. 128, 128 Pac. 696; *Southern Trust Co. v. Burney et al.*, 34 Okla. 552, 126 Pac. 748, 43 L. R. A. (N. S.) 308; *Greer et al. v. McNeal et al.*, 11 Okla. 519, 69 Pac. 891.

The plaintiffs in error next contend that the fund in the hands of the guardian, as shown by said reports, is not the property of the ward, and therefore the failure to pay it over, under the order of the court, is not a breach of the bond. Plaintiffs in error, in their brief, concede that the funds in controversy is the proceeds of the sale of the interest of said ward in a portion of the allotment of her deceased sister. The guardian sold whatever interest his ward had, or may have had, and received this fund therefor. It came into his hands as guardian, from this particular source, and he so reported it to the court from time to time, in his reports. The question as to whom the fund belonged is not before this court. This question, however, was before the county court, and it determined that it belonged to the estate of the ward. There was no appeal, and this, in the absence of fraud, is conclusive upon the guardian and the sureties on his bond. The father makes no claim to the money. He withdrew his application. He testified, under oath, upon the trial of this case, that he had withdrawn his application, and that he claimed no interest in this fund, or any part of it. The guardian did not sell any property of the father of his ward; he could not do so, in his official capacity as guardian. The money in his possession, as shown by his final report, is the property of his ward, as determined by the county court, and this is binding, so far as this case is concerned.

We think the trial court properly directed the jury to return a verdict for the plaintiff, and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.