**AETNA ACCIDENT & LIABILITY CO. v. LANGLEY et al.**

No. 8948—Opinion Filed May 14, 1918.

Rehearing Denied July 23, 1918.

(174 Pac. 1046.)

(Syllabus.)

1. **Guardian and Ward—Action on Guardian's Bond—Validity of Guardian's Appointment—Denial.**

In an action against the principal and surety on a guardian's additional bond given before the sale of real estate of the ward, brought by a subsequent guardian appointed as the successor of such principal, to recover the amount of the proceeds of the sale appropriated by the principal to his own use, the surety will not be permitted to deny the validity of the appointment of either guardian on the ground that the court did not have jurisdiction to appoint his principal as guardian.

2. **Guardian and Ward—Sureties on Guardian's Additional Bond—Release—Power of County Courts.**

County courts in the exercise of general probate jurisdiction have not the inherent power to release the sureties on a guardian's additional bond given before sale of real estate of the ward from liability thereon, but only such power in the premises as may be expressly conferred by statute.

3. **Same—Release of Sureties on Guardian's Bond.**

Section 6580, Rev. Laws 1910, impowers the judge of the county court to release sureties on a guardian's bond from future liability only, but not from liability on account of the antecedent default of the guardian.

4. **Same.**

An order of the county court releasing the surety on such guardian's bond from liability for an antecedent default of the guardian is a nullity.

5. **Same—Action Against Surety—Burden of Proof.**

In an action against a surety on a guardian's bond, discharged by release from subsequent but not previous defaults of the guardian, the default of the guardian being established, the burden is on the surety to show that the default did not occur prior to the release.

6. **Same—Decree on Final Account—Effect.**

A surety on a guardian's bond in the absence of fraud or collusion, is concluded by the decree of the county court on the hearing and settlement of the final report and accounts of the guardian as to the liability of the principal.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Matilda Sarah Langley, a minor, by her guardian, W. E. Alexander, against Sam L. Langley and others and the Aetna Accident & Liability Company. Judgment for plaintiff, and the Aetna Accident & Liability Company alone brings error. Affirmed.

Bridges & Vertrees and Everest & Campbell, for plaintiff in error.

R. H. Brown, Probate Atty., and J. B. Moore, for defendants in error.

Ames, Chambers, Lowe & Richardson, amicus curiae.

MILEY, J.  Sam L. Langley was appointed by the county court of Jefferson county guardian of the person and estate of Matilda Sarah Langley, a minor. His bond as such guardian, with C. L. Langley and J. E. Langley as sureties, in the sum of $1,500 was approved by the court. Thereafter, having obtained an order for the sale of real estate belonging to his ward, he was required to give an additional bond to the county judge in the sum of $7,000, conditioned to sell the real estate in the manner and account for the proceeds of the sale as required by law, which bond, with plaintiff in error, Aetna Accident & Liability Company, as surety, was executed and approved. Subsequently the said Sam L. Langley was removed and presented his final account and report as such guardian. On the 21st day of June, 1915, the said account and report coming on for settlement and allowance and after hearing thereon, the court found that the guardian had received from the sale of the land of his said ward the sum of $2,500, which he immediately appropriated to his own use and benefit, and charged his account with said sum and interest thereon at the rate of 6 per cent. per annum. The account was also charged with certain other items not involved in this appeal. The court adjudged the said Sam L. Langley to be indebted to his said ward on the said final settlement in the sum of $3,812.50, including, among others, the said item of $2,500 and interest thereon. W. E. Alexander was thereafter appointed by the county court of Jefferson county the successor of said Sam L. Langley as the guardian of the person and estate of the said minor, and he duly qualified as such. The amount adjudged to be due by the said Samuel L. Langley to his former ward on the final settlement not having been paid, this action was instituted pursuant to an order of said county court by the said minor by and through her said guardian, W. E. Alex-

ander, as plaintiff below, against the plaintiff in error, Aetna Accident & Liability Company, and the defendants in error, Samuel L. Langley, C. L. Langley, and James E. Langley, as defendants below, to recover the said amount of the said Samuel L. Langley as principal and the other defendants below as sureties on his several bonds before mentioned. The plaintiff in error answered, setting up various defenses, the other defendants making default. There was judgment in the court below against all defendants therein. The judgment against the said Aetna Accident & Liability Company was for the sum of $2,962, being the said sum of $2,500 found by the county court on the settlement of the accounts of the said Samuel L. Langley as due by him to his said ward on account of the misappropriation of proceeds of the sale of his ward's land, together with interest thereon to the date of the judgment. Motion for new trial having been overruled, the Aetna Accident & Liability Company alone brings the cause here, and to secure a reversal of the judgment against it assigns many errors. The assignments of error are grouped in the argument and discussed under four propositions which we will consider, instead of the several assignments of error in detail.

The plaintiff in error undertook to assail the order of the county court of Jefferson county appointing Samuel L. Langley as guardian and W. E. Alexander as his successor, on the ground that the court did not have jurisdiction, for the reason, as alleged, that at the time said Samuel L. Langley was appointed the said minors were actual residents of Love county, Okla. It is not claimed that the alleged jurisdictional defect appears upon the face of the record. It is well settled by the previous decisions of this court that an order of the county court appointing a guardian of a minor, being one of a court of general jurisdiction in probate matters, cannot be collaterally attacked by evidence aliunde. Langley v. Ford, 68 Okla. 83, 171 Pac. 471. Moreover the surety upon a guardian's additional bond executed before the sale of the real estate of his ward, where the property has been sold, will not be permitted in an action on the bond to deny the validity of the guardian's appointment. Donnell v. Dansby, 58 Okla. 165, 159 Pac. 317. The attack by plaintiff in error on the jurisdiction of the court to appoint either Langley or Alexander as guardian, being in effect only a denial of the validity of the appointment of its principal as guardian, was not permissible in this action. We do not think there is any merit in the con-

tention that the minor, having by her guardian ad litem in another action unsuccessfully assailed the regularity of the appointment of the guardian on jurisdictional grounds, is now estopped to assert through her proper representative the liability of the plaintiff in error upon the bond. We therefore conclude that there was no error in the proceedings in the court below in this regard.

The plaintiff in error contends that it was exonerated and discharged from liability as surety on the bond sued upon by an order of the county court of Jefferson county made and entered on the 20th of December, 1912. The order, so far as pertinent to this bond, was as follows:

"On this day came on to be heard the petition of Sam L. Langley, as the guardian of the above-named minors, for an order of this court discharging and exonerating his bonds heretofore given in this proceeding, and the court, after examining his report of all his proceedings under such guardianship filed with his petition herein, and being fully advised in the premises, is of the opinion that it would be a useless and needless expense to said minors to longer keep such additional bond in effect, and is of the opinion that it would be to the best interest of said minors to discharge and exonerate the following described bonds: The bond in the sum of $7,000 with Sam L. Langley as principal, and the Aetna Accident & Liability Company as surety, given to B. T. Price, county judge, and his successors in office for the benefit of Matilda Sarah Langley, a minor. * * * It is therefore by the court considered, ordered, adjudged, and decreed by the court that the above-described bonds be and they are hereby discharged and held for naught and the principal and surety thereon be exonerated from any and all liability thereunder."

The order was made after the sale had been confirmed and after the guardian had been authorized by order of the court to invest the proceeds in other real estate for the benefit of his ward. While the order discharging the bond was vacated by the county court in the order of June 21, 1915, settling the final accounts of the guardian, we pass over as immaterial the question as to whether the subsequent order is void as against the surety who had no notice of the proceeding. We are inclined to agree with counsel for plaintiff in error that if the order of December 20, 1912, was valid the same could not be vacated more than two years thereafter without notice to the surety and an opportunity to be heard thereon. But did the court have the power to discharge and release the surety from any and all liability on the bond by the order of

December 20, 1912, above quoted? We are of the opinion that the court did not have the power and that the order was void at least in so far as same may be construed as exonerating the surety from any liability existing at the time the order was made.

The Legislature has with special care enacted laws for the security and protection of infants and persons mentally incompetent, when their estates are committed to the control of guardians. Section 6532, Rev. Laws 1910, provides that before the order appointing any person guardian takes effect, and before letters are issued, the judge must require of such person a bond with sufficient sureties conditioned among other things to pay over and deliver at the expiration of his trust all the estate, moneys, and effects remaining in his hands or due from him on final settlement of his accounts to the person who is lawfully entitled thereto. Section 6564 provides that every guardian authorized to sell real estate must before the sale, give bond with sufficient surety, with condition to sell the same in the manner and to account for the proceeds of sale as provided by law. Similar security is exacted by express statute of executors and administrators for the protection of those interested in the estates of decedents committed to their management. Section 6264, Rev. Laws 1910. Although not in all cases named as obligee in the bond, the security is for the benefit of the minor, non compos mentis, or heirs, devisees, legatees, and creditors of the estate of the decedent, as the case may be, and it becomes theirs as much as if given directly to them. Sections 6268 and 6581, Rev. Laws 1910. They acquire a vested interest therein. National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651; Shaffner v. Rogers, 53 Pa. 470; Bellinger v. Thompson et al., 26 Or. 320, 37 Pac. 714, 40 Pac. 229.

The county court is merely the instrument by which the bond is obtained. When that is done and the bond is approved, the power of the court over it ceases except such as may be expressly conferred by statute. The taking of security is not discretionary with the court, but the duty to exact it is positively declared by law. The duty of the court to take security having been so carefully regulated by statute, it would be at least singular if the court had the power independently of statute to discharge the bond and release the surety from liability thereon upon any terms other than a compliance with the conditions thereof. Counsel have not cited, and we have not

found, any decision holding that such power exists. On the contrary, it is generally held that the court having jurisdiction of the appointment of guardians, executors, and administrators and settlement of their accounts has not the inherent power to discharge such bonds or release the sureties from liability thereon (Richter v. Leiby's Estate, 101 Wis. 434, 77 N. W. 745, affirmed, 107 Wis. 404, 83 N. W. 694; Shaffner v. Rogers, supra; Bellinger v. Thompson, supra) ; but such power must be conferred by statute, and where there is such a statute, its provisions are mandatory and strict compliance therewith is essential to work a release of the surety. Overfield v. Overfield, 30 S. W. 994, 17 Ky. Law Rep. 313; Barker v. Boyd, 71 S. W. 528, 24 Ky. Law Rep. 1389: Rice v. Wilson, 129 Mich. 520, 89 N. W. 336; Brehm v. United States Fidelity & Guaranty Co., 124 Wis. 339, 102 N. W. 36; Kaspar v. People, 230 Ill. 342, 82 N. E. 816.

Upon reason and in harmony with what seems to us plainly implied by the statutes commanding the court to take security, and in accordance with the holding of other courts, we conclude that the county courts of this state in the exercise of their probate jurisdiction have not the inherent power to discharge a guardian's original or additional bond, or release the sureties from any liability thereon, but only such power in the premises as is expressly conferred by statute and which can only be exercised in conformity therewith. The only statute specifically conferring power to release the sureties on a guardian's bond is section 6580, Rev. Laws 1910, which provides:

"The judge of the county court may require a new bond to be given by a guardian whenever he deems it necessary, and may discharge the existing sureties from further liability, after due notice given as he may direct, when it shall appear that no injury can result therefrom to those interested in the estate."

In this case no new bond was given at the time the court made its order releasing the additional bond of the guardian as appears from the face of the order itself. It would seem that the power to discharge existing sureties is granted by this statute only when a new bond is given. In other words, it is a grant of power to substitute a new bond for an existing one, and is not a grant of general power to release existing sureties from liability. If this is the correct construction of the statute, the order of release would be wholly void. However, it is not necessary to determine that question in

this case. In any event it is quite clear that the power is granted to release existing sureties from further or future liability only, and the power is not conferred in any case to release from accrued or then existing liability. American Bonding & Trust Co. v. Coons, 66 Okla. 34, 166 Pac. 887. So if it should be assumed that the court had the power under this statute to release the surety from subsequent defaults of the guardian without taking a new bond, the order of December 20, 1912, would be valid only to the extent that it released the surety from liability for default of the guardian after that date, and the order in so far as it purports to release the surety from liability for previous defaults of the guardian is a mere nullity for want of power in the court to make it.

The release, in any event, then is valid only in so far as it discharged the surety from liability for subsequent defaults of the guardian, but is clearly void in so far as it purports to release from the guardian's previous defaults. The default of the guardian, as we shall presently show, was settled by the order settling his final account, and the surety was liable on the bond unless the default occurred subsequent to the date of the release. The burden was not on the plaintiff below to establish that the default occurred prior to the date of the release, but to complete its defense of release the burden was on the surety to show that the funds were not misappropriated during the time the bond was in force. American Bonding & Trust Co. v. Coons, supra. This the plaintiff in error did not do. It is true that prior to the making of the order of December 20, 1912, discharging the bond, the court had authorized the guardian to invest the proceeds of the sale in other real estate for the benefit of his ward, but there was no finding or adjudication in the order that this had been done. Proof that prior to the date of the order the guardian had purchased real estate, taking title thereto in his own name, would not have been proof that the funds were not misappropriated prior to the date of the release, but the contrary. In our opinion, the court below did not err in holding that the plaintiff in error was not released from liability.

Section 6565, Rev. Laws 1910, makes the provisions of law concerning the estates of decedents applicable to proceedings under petitions of guardians for sale of property of their wards, etc., but we doubt if under that section the provisions of sections 6278, 6279, and 6293, relating to executors' and administrators' bonds are applicable to guar-

dians' bonds. However, if such provisions are applicable, authority is not conferred on the court under those sections to release the sureties from previous defaults, but only from defaults subsequent to giving new sureties to the satisfaction of the judge. The power of the court under those sections to release sureties is no greater than that under section 6580, supra.

The two remaining propositions discussed in the brief of plaintiff in error will be considered together; one arising on the action of the court below in excluding evidence offered by plaintiff in error, which it claims tended to prove there had been no valid sale of the minor's land, and that consequently there could be no liability on the bond to account for the proceeds of the sale; the other in excluding evidence which it claims tended to show that the funds derived from the sale had been reinvested in other real estate under direction of the court, and there had therefore been no breach of the condition of the bond. The order of the court settling the final accounts of the guardian expressly found that he had received the sum of $2,500, the proceeds of the sale, and that he had not reinvested the same in other real estate for the benefit of his ward, but, to the contrary, had appropriated the amount to his own use, and charged his account with the amount and interest thereon. There was no appeal from this order, and it is conclusive on the guardian as to his liability. There is no charge by the surety that there was fraud or collusion in the settlement of the final account, and although the surety had no notice and did not participate in the settlement, the order is for the purpose of this action conclusive upon it also and not subject to attack by it on the grounds stated. Greer v. McNeal, 11 Okla. 526, 69 Pac. 893; Southern Surety Co. v. Burney, 34 Okla. 552, 126 Pac. 748, 43 L. R. A. (N. S.) 308; Title Guaranty & Surety Co. v. Slinker, 35 Okla. 128, 128 Pac. 696; Henry v. Melton, 46 Okla. 278, 148 Pac. 730; Boudinot v. Locust, 55 Okla. 662, 151 Pac. 579; Cabell v. McLish, 61 Okla. 224, 160 Pac. 592; Southwestern Surety Ins. Co. v. Richard, 62 Okla. 122, 162 Pac. 468; State ex rel. Weaver v. Weaver, 92 Mo. 673, 4 S. W. 697; In re Appeal of Schlee, 65 Mich. 362, 32 N. W. 717.

The judgment is affirmed.

All the Justices concur.