**PACE v. OLVEY.   (No. 2638.)**

(Court of Civil Appeals of Texas.   Amarillo. March 17, 1926.   Rehearing Denied April 14, 1926.)

1. **Appeal and error** ⟨key⟩1050(1)—**Plaintiff may not object to defendant's testimony that he could have perfected his title as required by contract in suit, where testimony of same import was admitted without objection.**

Plaintiff may not object to defendant's testimony that he could have perfected his title as required by the contract in suit, where testimony of the same import was admitted without objection.

2. **Mines and minerals** ⟨key⟩109—**Where plaintiff, a party to contract to drill oil well, claimed he was not to drill until defendant had good title, which defendant denied, held defendant's testimony that he could have secured good title if plaintiff had drilled was admissible.**

Where plaintiff, who was party to contract to drill oil well, claimed he was not to drill well until defendant had secured good title, which claim defendant denied, defendant's testimony that he could have secured good title if plaintiff had drilled the well was admissible.

3. **Trial** ⟨key⟩68(2)—**Refusal to reopen case was not abuse of "discretion," where evidence had been closed, plaintiff's counsel had addressed court, defendants had spoken for an hour, and plaintiff did not tender any witness or offer to prove any particular fact by such witness.**

Where evidence had been closed, plaintiff's counsel had addressed the court, which was trying the case without a jury, and defendants had spoken for an hour, and plaintiff did not tender any witness or offer to prove any particular fact by such witness, it was not abuse of "discretion," to refuse further evidence and to refuse to permit filing a trial amendment; discretion being the option either to do or not to do that which is proposed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Discretion.]

4. **Damages** ⟨key⟩157(3)—**Allegation that stipulation for payment of $2,000, if drilling of oil well was not begun within fixed time, was penalty and void held not to authorize proof that sum named was in excess of actual damage.**

Allegation that stipulation for payment of $2,000 as liquidated damages, in the event that the drilling of an oil well was not begun within the time contracted, was a penalty and void held not to authorize admission of evidence that the sum named was in excess of the actual damages.

5. **Damages** ⟨key⟩76—**Judgment will not be set aside as based on penalty, where damages would have been difficult of ascertainment, and parties agreed on amount as liquidated damages, and where evidence failed to show sum was not warranted by facts.**

Judgment will not be set aside as based on a penalty, where the damages from breach of contract sued on would have been difficult of ascertainment and the parties expressly fixed the amount of the judgment, as the amount of liquidated damages for such breach and the evidence fails to show such sum was not warranted by the facts.

6. **Mines and minerals** ⟨key⟩109—**Contract, providing that on completion of oil well title to one-half interest in lease should vest, held to make beginning at least of drilling condition precedent to delivering title.**

Contract, providing that on completion of an oil well title to a one-half interest in the oil lease should vest in driller, held to make the beginning at least of the drilling a condition precedent to performance of the contract to deliver title.

7. **Appeal and error** ⟨key⟩931(5)—**On conflicting evidence, it is presumed that court made findings on facts necessary to support judgment (Vernon's Sayles' Ann. Civ. St. 1914, art. 1985).**

Where plaintiff's and defendant's testimony conflicted, the matter was for the court hearing the evidence, and the appellate court presumes he made his findings on the facts necessary to support the judgment, under Vernon's Sayles' Ann. St. 1914, art. 1985.

8. **Mines and minerals** ⟨key⟩109—**Evidence held sufficient to sustain finding of court acting without jury that beginning drilling of oil well at stipulated time was not waived.**

Evidence held sufficient to sustain finding of court acting without jury that contractee had not waived beginning of drilling oil well by contractor at stipulated time.

9. **Mines and minerals** ⟨key⟩74—**That vendor did not have complete title to oil lease held not to render void contract to convey same, where owner of outstanding interest ratified contract and authorized assignment before date of performance.**

Where vendor, having legal title, contracted to deliver at certain time the one-half interest in an oil lease and at time of contracting he did not have good title because of an outstanding equitable interest, but owner of the outstanding interest was willing to ratify, and did by his conduct ratify, the contract, and vendor had authority from him to assign the lease, held the contract was valid, as vendor was in position to deliver before time for performance.

Appeal from District Court, Wichita County; Guy Rogers, Judge.

Suit by Geo. L. Pace against John W. Olvey. Judgment for defendant on his cross-action, and plaintiff appeals. Affirmed.

Walter Nelson and Fitzgerald & Hatchitt, all of Wichita Falls, for appellant.

Carrigan, Britain, Morgan & King and E. R. Surles, all of Wichita Falls, for appellee.

RANDOLPH, J.   This suit was brought by appellant against appellee to recover the sum of $2,000 which had been placed in a bank in Wichita Falls, under and by virtue of the terms of a certain contract—the terms of

which contract under the evidence presenting the questions we will discuss herein will be set out later.

On the trial of the case before the court without a jury, judgment was rendered that the plaintiff take nothing by his suit, and that defendant recover on his cross-action against the plaintiff the sum of $2,000 (the trial court herein having found in said judgment that the plaintiff had breached his contract to drill a well), as liquidated damages. From this judgment plaintiff has appealed.

By his first proposition appellant presents as error the action of the trial court in permitting the introduction of certain testimony, as follows:

"The contract in this case being an assignment to an undivided one-half interest in a certain oil and gas lease, and the title to said lease not being good in John W. Olvey, the defendant, but a one-third undivided interest therein being outstanding in Lee Tidwell, and the plaintiff not being required under the contract to pay the consideration for the lease by drilling a well thereon until the agreement as to the title had been carried out, it was error for the court to allow the defendant to testify that, had the plaintiff gone on the lease and drilled the well, he, defendant, could have gotten all of the other interests in the lease and perfected his title, because the same was a conclusion and an opinion and a self-serving declaration."

For the purpose of the discussion of this proposition, we will first consider same from the viewpoint urged by the plaintiff; that is, that the contract did not require that the plaintiff pay the consideration for the lease by drilling the well until the agreement as to the title had been performed.

[1, 2] Even if the plaintiff's construction of the contract be accepted, he is in no position to urge the objection made by him here. The testimony objected to was to the effect that Olvey could and would have rectified the condition of the title to the lease by getting in the outstanding interest of Tidwell. While this particular testimony was objected to, testimony to the same import was admitted in evidence without objection on the part of the plaintiff. Tidwell testified that he told the plaintiff that he would ratify any trade that Olvey made with him; that Olvey had the right under the understanding he (Tidwell) had with him to make a contract, and have him (Tidwell) ratify or sign it; that he (Tidwell) was willing, able, and ready to all times to give him any ratification that he wanted. This testimony not having been objected to, and being offered to serve the same purpose as that of Olvey complained of, even if Olvey's testimony was subject to the objection urged against it, was thus rendered harmless. Texas & Pac. Ry. Co. v. Curry, 64 Tex. 85; W. T. Wilson Grain Co. v. Fitch (Tex. Civ. App.) 208 S. W. 556; St. Louis S. W. Ry. Co. v. Johnson (Tex. Civ. App.) 94 S. W. 162. However, we think Olvey's testimony was ad-missible under authority of the case of Armstrong v. Palmer (Tex. Civ. App.) 218 S. W. 627.

We will discuss the question as to whether the plaintiff was required to drill the well before he could insist on the performance by defendant of the contract to convey title in our consideration of later propositions.

[3] Appellant's second proposition charges that it was error in the trial court's refusing to allow the plaintiff to prove that no damage could have possibly resulted to the defendant by a few days delay in beginning the drilling of the well on the lease, and that the sum of $2,000 named as agreed liquidated damages was far in excess of any damages that would naturally flow from the breach of the stipulation requiring him to begin drilling operations by a certain date, and this even though both parties had closed the introduction of evidence and were arguing the case.

In this connection we will also discuss the refusal of the trial court to permit the plaintiff to withdraw his announcement of ready for trial "long enough to file a trial amendment making more definite and specific his plea of penalty and waiver."

The court's notation on the bill shows that the evidence in the case was closed, and that plaintiff's counsel had addressed the court for an hour and fifteen minutes; that the defendant's counsel had spoken for one hour, when plaintiff's counsel requested that the court reopen the case, as stated, which request was by the court refused. No excuse was offered for the failure to properly plead this defense to such provision being held to be a penalty before the case went to trial, and no ground of surprise by the unexpected introduction of evidence which the plaintiff could not have anticipated. He was bringing suit with every term of the contract before him, and his suit was one in avoidance of the very terms of the contract; hence he should have been prepared to meet the issue which he had raised by his suit.

In plaintiff's first amended original petition he alleges:

"Plaintiff avers that the stipulation in said contract hereinabove alleged is in the nature of a penalty and is a penalty and is unenforceable and void."

By the trial amendment plaintiff enlarges somewhat on this allegation, and makes it read:

"Plaintiff avers that the stipulation in said contract hereinabove alleged is in the nature of a penalty, and is a penalty and is unenforceable and void, in that there were no actual damages sustained, or could be sustained, by a delay of a few days in the beginning of drilling operations."

In the third paragraph of the contract it is provided:

"It is agreed that, in the event the assignee should fail to begin actual drilling of said well within the time herein provided for, then and in that event he shall pay to the assignor the sum of $2,000 as liquidated damages, which sum is agreed by and between the parties to be a reasonable compensation for failure to comply with said agreement, and that, in such event, in addition to paying the assignor the sum of $2,000, the assignee shall forfeit all rights acquired under or by virtue of this contract and assignment; and it is further agreed that this contract and assignment shall be deposited with the First National Bank, of Wichita Falls, Tex., and held in escrow by said bank until it has been furnished an affidavit of some responsible person showing that the assignee has begun the actual drilling of said well within the time provided for in this assignment, or until it has been directed by the assignor herein to deliver such assignment to said assignee. Upon being furnished such affidavit, or given such instrumentation by the assignor herein, said assignment shall be delivered by said escrow agent to assignee."

It is within the sound discretion of the trial court to admit evidence and permit the filing of a trial amendment under the conditions recited above. It is true that such discretion is a legal discretion, and that it must not be abused. But in this case there is no excuse, as stated, for the failure on the part of the plaintiff to assert his rights in due season. Again, the plaintiff does not show that he tendered any witness and offered to prove any particular fact by such witness. Under the circumstances we cannot say that the trial court abused the discretion vested in him by law in refusing such proof and in not permitting the filing of the trial amendment, in that broad sense that defines such discretion as "the option which a judge may exercise either to do or not to do that which is proposed to him that he shall do; choosing between the doing and not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done; the exercise of the right legally to determine between two or more courses of action." 18 C. J. § 3, p. 1135.

[4] Appellee also insists that the plaintiff's pleading is so defective as not to authorize the introduction of the proof tendered. We think this contention is correct. Walsh v. Methodist Episcopal Church, South (Tex. Com. App.) 212 S. W. 950, 951.

[5] It is apparent that at the time the contract was entered into any damage resulting from its breach would have been difficult of ascertainment, and, the parties having expressly fixed the compensation for such breach, we cannot say from the evidence before us that such sum so ascertained and fixed by them was not warranted by the facts, and therefore have no authority to set aside the judgment as a penalty. Walsh v. Methodist Episcopal Church South (Tex. Civ. App.) 173 S. W. 241; Id. (Tex. Com. App.) 212 S. W. 950; Collier v. Betterton, 29 S. W.

467, 87 Tex. 440; Am. Nat. Bank v. Haggerton (Tex. Civ. App.) 250 S. W. 279; Garrard v. Cantrell (Tex. Civ. App.) 232 S. W. 911; Brown Iron Co. v. Norwood (Tex. Civ. App.) 69 S. W. 253; Orenbaum Bros. v. Sowell (Tex. Civ. App.) 153 S. W. 905; Rock v. Keton (Tex. Civ. App.) 229 S. W. 362.

[6] In addition to clause 3 above quoted, the contract contains the following provisions essential to the determination of the questions as to whether or not it was incumbent upon the plaintiff to begin the drilling of the well before insisting upon performance of the requirements as to title by the defendant, viz.:

"Fourth. Upon the completion of said well in the manner hereinabove provided for, the title to an undivided one-half interest in said lease shall vest in and become the property of the assignee, and thereafter all expense and cost of further operating and developing said lease shall be borne equally by the parties hereto. It is understood that neither party hereto shall spend in excess of $1,000 on said lease without the consent of the other party. Any further drilling after the completion of the well herein provided for, if done by either of the parties to this contract, shall be done at the prevailing contract price for drilling wells in that vicinity, and, in the event additional wells are drilled, the assignor shall have the right to drill one well and the assignee one well, and any further drilling shall be done alternately by the parties hereto, if they elect to do such drilling, and the cost thereof shall be borne equally by the parties hereto.

"And I, the said John W. Olvey, hereby covenant with the said George Pace that said property is free of all liens of every kind and character except $11,000.00 payable out of eighteen-sixty-fourths of the oil and gas produced from said lease, which sum it is agreed shall be payable out of the interest of the said John W. Olvey; that he has a lawful right and authority to sell and convey said property; and that he will forever warrant and defend the title thereto against all lawful claims whatever."

It was, by the express provisions of the terms of the contract quoted, within the contemplation of the parties that no interest in such lease was to vest in the plaintiff until he completed the drilling of the well. But, if we are wrong as to this, certainly no interest vested in him until he began the actual drilling of it. In either event, no title had vested in him. The contract not only provides that title shall not vest in him until the completion of the well, but it also provides that the contract shall be held in escrow by the bank until it shall have been furnished with an affidavit, etc., showing that the assignee has begun the actual drilling of the well within the time provided, or until it has been directed by the assignor to deliver same. The express provisions of the contract show, in any event, that the beginning of the drilling of the well was a condition precedent to the performance by defendant of his part of the contract to deliver the title.

[7, 8] However, the plaintiff contends that

(282 S.W.)

the defendant, by his agreed extension of the time, waived the beginning of drilling operations by the 16th day of June. This was a disputed matter. The plaintiff testified that the defendant agreed to extend the time until he secured Tidwell's signature to the lease or had him ratify it, and the defendant testified that he excused the plaintiff in the performance by June 16th provided he would do so before the expiration of the lease. This was a matter for the court hearing the evidence to solve, and, the court having rendered judgment against the plaintiff, we must presume that he made his finding upon the facts necessary to support the judgment. Article 1985, Vernon's Sayles' Ann. Civ. St. 1914.

[9] Does the fact that a one-third outstanding interest appears in Tidwell invalidate the contract under the facts? We think not, because under the evidence it appears that the legal title rested in Olvey, and, while Tidwell owned an equitable interest, he is shown to have been ready, able, and willing to, and did by his conduct, ratify the contract made by Olvey with the plaintiff, and it is made to appear that Olvey, having the legal title to the lease, had full authority from Tidwell to make the lease or to assign it.

When the vendor does not have the title himself, but is in a position to deliver it, and has contracted to so deliver it at such time when such contract is ready for final closing, the contract is in no sense void because of his not owning the title at the time of his entering into the contract. Armstrong v. Palmer, supra.

Not finding any reversible error, we affirm the judgment of the trial court.